# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **NEW DAY PERSONAL CARE SERVICES INC** | **CASE NO. 6:25-CV-00075** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **JULIE A SU ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) filed on behalf of Defendants Lori Chavez-DeRemer, Secretary of Labor, and Patricia Davidson, Deputy Administrator of the Wage and Hour Division. (Rec. Doc. 13). Plaintiff opposed the Motion (Rec. Doc. 16), and Defendants replied (Rec. Doc. 19). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is RECOMMENDED that the Motion to Dismiss be GRANTED in part and DENIED in part.

**Facts and Procedural History**

Plaintiff filed the present action on January 17, 2025, against the then Acting Secretary of the United States Department of Labor ("DOL") and Administrator of DOL's Wage and Hour Division[1] seeking "an order declaring unlawful and setting aside (1) a United States Department of Labor Final Rule for domestic service employment, *see Application of the Fair Labor Standards Act to Domestic Service*, 78 Fed. Reg. 60,454 (Oct. 1, 2013) ('2013 Rule'), and (2) the Department's assessment of liability for back wages issued against Plaintiff" or "an order declaring that the Fair Labor Standards Act's extension of overtime to 'employee[s] in domestic service,' 29 U.S.C. § 207(*l*), exceeds the limited and enumerated powers of the United States Congress under Article I of the U.S. Constitution." (Rec. Doc 1, ¶¶ 1-2).

I. **The Fair Labor Standards Act and the 2013 Rule**

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, generally requires covered employers to pay a minimum wage and requires payment of overtime compensation for weekly work hours beyond forty. 29 U.S.C. §§ 206(a), 207(a)(1). Relevant to the present matter, the Fair Labor Standards Amendments of 1974, Pub. L. No. 93–259, 88 Stat. 55, extended the Act's minimum-wage and

---

[1] The current Secretary of Labor and Deputy Administrator have been automatically substituted pursuant to Fed. R. Civ. P. 25(d).

overtime protections to employees in "domestic service." 29 U.S.C. §§ 206(f), 207(*l*). Per the committee reports to the 1974 Amendments, domestic service "includes services performed by persons employed as cooks, butlers, valets, maids, housekeepers, governesses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use." S.Rep. No. 93–690, at 20 (1974); H.R.Rep. No. 93–913, at 35–36 (1974).

However, the 1974 Amendments exempted several categories of domestic service workers from certain FLSA requirements: (1) the FLSA's minimum-wage and overtime requirements shall not apply with respect to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)," and (2) the FSLA's overtime protections shall not apply with respect to "any employee who is employed in domestic service in a household and who resides in such household." 29 U.S.C. § 213(a)(15) and 29 U.S.C. § 213(b)(21). Over the course of the next year, the DOL adopted implementing regulations, some of which addressed the treatment of companionship-services workers and live-in domestic-service workers who are employed by third-party agencies. *See* 29 C.F.R. § 552.109(a), (c) (2014) & 29 C.F.R. § 552.6 (2014).

After decades of legal interpretations, in 2013, the DOL adopted a new regulation ("2013 Rule") concluding that, "given the changes to the home care industry and workforce" since the original 1975 regulations, the new regulation would "better reflect Congressional intent" behind the 1974 Amendments. Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454 (Oct. 1, 2013). As authority for the new regulation, the DOL cited, in part, the general grant of rulemaking authority in § 29(b) of the 1974 Amendments. *Id*. at 60,557. The 2013 Rule eliminated the overtime exemption for third-party employers of companionship-services and live-in employees. 29 C.F.R. § 552.109(a) & (c)(2015). It also narrowed the DOL's definition of "companionship services:" "[t]he term companionship services ... includes the provision of care"—such as "meal preparation, driving, light housework, managing finances, assistance with the physical taking of medications, and arranging medical care"—only if that care "does not exceed 20 percent of the total hours worked." *Id.* § 552.6(b) (2015). This definition further limited the scope of the Act's companionship-services exemption and thus expanded the reach of the FLSA in the domestic service field.

II. **DOL's Investigation of Plaintiff**

According to the Complaint, Plaintiff "is a third-party agency that handles Medicare and Medicaid reimbursement for home care services provided by independent contractors to infirm, elderly, and physically and mentally impaired

4

individuals." (Rec. Doc 1, ¶ 3). The providers "provide companionship services at the homes of [Plaintiff's] clients" including "companionship, assisting the client with dressing, grooming, and eating, and may include limited assistance with housekeeping tasks." (*Id*. at ¶ 42). Plaintiff's home care providers are engaged and paid as 1099 contractors, paid an agreed hourly rate, and are not paid overtime for hours worked beyond 40 hours per week. (*Id*. at ¶ 41). Per Plaintiff, they "cannot afford to pay home care providers time-and-a-half overtime and remain in business because the effective hourly wage rate would exceed the maximum reimbursement rates available under the Medicare and Medicaid programs," and they cannot "provide home care services without providers working more than 40 hours per week because clients need consistent care from the same provider." (*Id*. at ¶¶ 45-46).

In February 2024, Plaintiff was contacted by a DOL investigator and provided "all requested information, including pay records for its home care providers." (*Id*. at ¶ 47). On June 4, 2024, Plaintiff was informed that "it had been assessed $923,960.40 of back wages for overtime pay spanning a two-year audit period." (Rec. Doc. 1, ¶ 48). Plaintiff was given a "WH-56 Form (Final Assessment) that included the computation of the back wages that DOL demanded New Day pay to the home care providers and advised New Day that it needed to begin paying all home care providers overtime wages." (*Id*. at ¶ 49). Plaintiff disagreed with the DOL's assessment and retained counsel. (*Id*. at ¶ 50). In November 2024, Plaintiff

5

alleges they were informed that the DOL was engaging in information gathering "in preparation for filing a potential enforcement action." (*Id.* at ¶ 52). Per Plaintiff, the "Final Assessment and the impending enforcement proceedings would make it impossible for New Day to remain in business, harming New Day, its providers, and its customers. New Day therefore brings this pre-enforcement claim to clarify its rights and obligations under the FLSA." (*Id.* at ¶ 53). Plaintiff asserts claims for violation of the Administrative Procedure Act ("APA")(Count I), *Ultra Vires* doctrine (Count II), Enumerated Powers violation (Count III), and declaratory judgment (Count IV). (*Id.* at ¶¶ 54-77).

Defendants maintain that Plaintiff's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff lacks standing and the Court lacks jurisdiction "because none of the statutes identified by Plaintiff as a basis for jurisdiction contain or incorporate a relevant waiver of sovereign immunity." (Rec. Doc. 13-1, p. 12). Defendants also contend that "the presentation of the Form WH-56 does not constitute a final agency action subject to APA challenge, and an *ultra vires* claim is inappropriate under these facts." (*Id.*). Lastly, Defendants assert that "Plaintiff's APA claim challenging the 2013 Rule is untimely, and Plaintiff's claim for declaratory judgment is not permitted under the FLSA" warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(6). (*Id.*).

## Law and Analysis

I. **Law applicable to Rule 12(b)(1)**

Defendants first challenges the Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The Fifth Circuit's standard for consideration of such motions is as follows:

> Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.
>
> \*\*\*
>
> In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (cleaned up).

Here, Defendants maintain the Court lacks jurisdiction because (1) Plaintiff lacks standing, (2) "because none of the statutes identified by Plaintiff as a basis for jurisdiction contain or incorporate a relevant waiver of sovereign immunity" (Rec. Doc. 13-1, pp. 12 & 16), and (3) because "Plaintiff's objection to the presentation of the Form WH-56 is without merit because issuance of the form does not constitute a final agency action upon which an APA claim can be predicated." (*Id*. at 17).

## II. Law applicable to Rule 12(b)(6)

To survive a Rule12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Here, Defendants assert that "Plaintiff's APA claim challenging the 2013 Rule is untimely, and Plaintiff's claim for declaratory judgment is not permitted under the FLSA" warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## III. Standing

To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the*

*Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). For the reasons that follow, the Court finds that Plaintiff has standing to bring this action.

### IV. Plaintiff's Prayers for Relief

Plaintiff requests this Court to declare unlawful and set aside (1) the 2013 Rule and (2) the DOL's WH-56 assessment of back wages issued to Plaintiff or (3) declare that the DOL's "extension of overtime to 'employee[s] in domestic service,' 29 U.S.C. § 207(*l*), exceeds the limited and enumerated powers of the United States Congress under Article I of the U.S. Constitution." (Rec. Doc. 1 ¶¶ 1 & 2). Though Plaintiff pleads several counts/doctrines – violation of the Administrative Procedure Act ("APA")(Count I), *Ultra Vires* doctrine (Count II), and declaratory judgment (Count IV) – Plaintiff's prayers for relief regarding the 2013 Rule and Form WH-56, and this Court's review thereof, fall under the purview of the APA. Section 706(2)(C) of the APA outlines a specific ground for judicial review of agency action. Specifically, it mandates that a reviewing court shall hold unlawful and set aside agency action found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). In essence, there are two agency actions Plaintiff requests this Court to review and overturn: (1) the issuance of the WH-56 Form to Plaintiff and (2) the DOL's 2013 Rule.

### a. **WH-56 Form**

Plaintiff asks this Court to declare unlawful and set aside the DOL's WH-56 assessment of back wages issued to Plaintiff. Plaintiff maintains the "DOL exceeded its statutory authority by issuing a [Form WH-56] to Plaintiff pursuant to the invalid 2013 Rule." (Rec. Doc. 1, ¶ 61). Per Defendants, "Plaintiff's objection to the presentation of the Form WH-56 is without merit because issuance of the form does not constitute a final agency action upon which an APA claim can be predicated." (Rec. Doc. 13-1, p. 17). In this circuit, the "final agency action" requirement is a jurisdictional threshold, not a merits inquiry. *See Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States*, 362 F.3d 333, 336 (5th Cir. 2004) ("If there is no 'final agency action,' a federal court lacks subject matter jurisdiction." (citing *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999))). An administrative action is "final agency action" under the APA if: (1) the agency's action is the "consummation of the agency's decisionmaking process;" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154 (1997)(internal quotation marks omitted).

Regarding judicial review of agency action, the Supreme Court recently held:

> The Court has explained that § 702 "requir[es] a litigant to show, at the outset of the case, that he is injured in fact by agency action." A litigant therefore cannot bring an APA claim unless and until she suffers an

> injury. While § 702 equips injured parties with a cause of action, § 704 provides that judicial review is available in most cases only for "final agency action." Reading § 702 and § 704 together, a plaintiff may bring an APA claim only after she is injured by final agency action.

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,* 603 U.S. 799, 799–800, (2024)(internal citations omitted).

Pertinent to the present matter, the Fifth Circuit has held:

> An agency's initiation of an investigation does not constitute final agency action. *See FTC v. Standard Oil Co.,* 449 U.S. 232, 239–45 (1980) (holding issuance of administrative complaint to initiate proceedings not final agency action); *Dow Chemical Co. v. EPA,* 832 F.2d 319, 325 (5th Cir.1987) (holding "allegation made in enforcement suit does not impose the *kind* of legal obligation with which the finality doctrine is concerned"). Normally, the plaintiff must await resolution of the agency's inquiry and challenge the final agency decision. *Standard Oil,* 449 U.S. at 244–45.

*Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)(cleaned up).

Here, Plaintiff was merely investigated by the DOL Wage and Hour Division ("WHD"), which was created pursuant to the FLSA (29 U.S.C. §§ 204(a)), and provided with a Form WH-56. (Rec. Doc. 1-1). Form WH-56, also known as the "Summary of Unpaid Wages," is issued by the WHD to notify an employer of back wages allegedly owed to employees under the FLSA. (*See Id*. at pp. 8-66). While Form WH-56 does reflect the WHD's belief that wages are due following an investigation, it does not create legal obligations enforceable by law. Indeed, if the employer and the DOL cannot reach a settlement regarding Form WH-56, the DOL

11

can initiate an enforcement proceeding. Plaintiff has not yet been ordered to pay unpaid wages. Accordingly, the Court finds that it does not have subject matter jurisdiction to review, set aside, or declare invalid the WH-56 form presented to Plaintiff as it is not a final agency action.

### b. 2013 Rule

Plaintiff maintains that the 2013 Rule exceeds the DOL's statutory authority. (Rec. Doc. 1). Defendants assert that "Plaintiff's APA claim challenging the 2013 Rule is untimely" warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(6). The Court notes that while pursuant to Fed. R. Civ. P 8(c)(1) statute of limitations is an affirmative defense that must be affirmatively raised, "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

### i. Statute of Limitations

Pursuant to 28 U.S. Code § 2401(a), "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The Supreme Court recently ruled that the statute of limitations for challenging agency action does not accrue until the specific plaintiff in question has been injured noting that "[a]n APA plaintiff does not have a complete and present cause of action until she suffers an injury from final agency

action, so the statute of limitations does not begin to run until she is injured." *Corner Post, Inc.*, 603 U.S. at 809 (2024).

Defendants assert that the enactment of the 2013 Rule constituted the final agency action triggering the six years statute of limitations. (Rec. Doc. 13-1, pp. 33-34). Specifically, Defendants maintain that "Plaintiff could have challenged the 2013 Rule under the APA for six years after Plaintiff was first subject to it." (Rec. Doc. 19, p. 6). This Court disagrees when applying *Corner Post*. In *Corner Post*, the plaintiff challenged a regulation enacted by the Federal Reserve Board ("Board") in 2011. *Corner Post*, 603 U.S. at 799. The plaintiff did not file their suit until 2021. The Board made a similar argument as Defendants here – that the promulgation of the regulation constituted the final agency action triggering the six years statute of limitations. *Id*. at 814. The Supreme Court found that this argument lacked merit focusing on § 2401(a)'s use of the term "accrues." *Id*. ("And the Court has explained that the traditional accrual rule looks to when the plaintiff—this particular plaintiff—has a complete and present cause of action. No precedent supports the Board's hypothetical 'when could someone else have sued' sort of inquiry."). In sum, the Supreme Court found that the plaintiff's injury did not accrue for purposes of triggering the statute of limitations until the regulation was enforced upon them. *Id*.

Here, the Court does not find that Plaintiff's claim challenging the 2013 Rule is time barred. The Court agrees with Plaintiff that until it was investigated, it

13

"operated on the uncontested understanding that it was not an employer subject to the FLSA, and thus faced no imminent and credible threat of enforcement from the [DOL]." (Rec. Doc. 16, p. 18). It was not until Plaintiff was investigated and presented with the WH-56 form that Plaintiff had an appreciable cause of action. However, whether this Court can review Plaintiff's challenges to the 2013 Rule turns on whether Plaintiff's "legal wrong" or "injury" has sufficiently accrued despite the lack of a DOL enforcement proceeding.

### ii. Pre-Enforcement Judicial Review

Plaintiff contends that its claims are entitled to pre-enforcement judicial review even though it has not yet been subjected to an enforcement proceeding or formally ordered to pay unpaid wages. (Rec. Doc. 16). Plaintiff relies on a number of cases wherein the Supreme Court held that "parties need not await enforcement proceedings before challenging final agency action where such proceedings carry the risk of 'serious criminal and civil penalties.'" *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016)(citing *Abbott Lab'ys v. Gardner,* 387 U.S. 136, 153 (1967)).

"Pre-enforcement review" is a determination of the validity of a regulation before any attempt has been made to enforce it." *Abbott Lab'ys,* 387 U.S. at 139. When challenging a rulemaking process, "a claim accrues when the plaintiff has a

right to assert it in court—and in the case of the APA, that is when the plaintiff is injured by final agency action." *Corner Post, Inc.*, 603 U.S. at 799.

Here, the parties agree that the enactment of the 2013 Rule constituted final agency action. The disagreement is whether Plaintiff has yet suffered a legal wrong or suffered an injury from this final agency action. Plaintiff cites to 29 C.F.R. § 578.3(c)(2) to argue that the receipt of the WH-56 form "newly threatens [Plaintiff] with a risk of liability for willful violations, such as civil penalties and fines." (Rec. Doc. 16, p. 19). 29 C.F.R. § 578.3(c)(2) states that "…the employer's receipt of advice from a responsible official of the [WHD] to the effect that the conduct in question is not lawful, among other situations, can be sufficient to show that the employer's conduct is knowing, but is not automatically dispositive" when analyzing whether an employer willfully violated the FLSA giving rise to additional penalties. ("A penalty of up to $2,515 per violation may be assessed against any person who repeatedly or willfully violates section 6 (minimum wage) or section 7 (overtime) of the Act." 29 C.F.R. § 578.3(a)(2)).

The Court agrees with Plaintiff that the DOL investigation, the conversations had with WHD agents, and the issuance of the WH-56 form could be used against them in a future enforcement proceeding to "to show that [Plaintiff's] conduct is knowing" giving rise to additional civil penalties. 29 C.F.R. § 578.3(c)(2). Accordingly, similar to *Abbott Lab'ys*, the Court finds that Plaintiff has been

sufficiently injured by final agency action making this matter ripe for judicial review and recommends that Defendants' request to dismiss Plaintiff's APA claims regarding the 2013 Rule be denied.

### c. *Ultra Vires* Doctrine

Plaintiff alleges the DOL acted *ultra vires* when it "exceeded its statutory authority" by implementing the 2013 Rule and issued Plaintiff the WH-56 form. (Rec. Doc. 1, ¶¶ 62-69). "An *ultra vires* claim generally requires proof that an agency exceeded the bounds of its *statutory* authority. An agency acts *ultra vires* when it "go[es] beyond what Congress has permitted it to do." *Ayala Chapa v. Bondi*, 132 F.4th 796, 798 (5th Cir. 2025)(citing *City of Arlington v. FCC*, 569 U.S. 290, 297–98 (2013)).

Plaintiff opines that "[s]hould the Court agree with [Plaintiff] that [Plaintiff] may challenge the 2013 Rule or Final Assessment under the APA, then there is no need to reach the *ultra vires* claims raised by [Plaintiff]." (Rec. Doc. 16, p. 24). This Court agrees. Because the Court is recommending that Plaintiff's APA claim challenging the 2013 Rule proceed, it recommends that Plaintiff's *ultra vires* claim (Count II) be dismissed as duplicative.

### d. Declaratory Judgment

Plaintiff raises a separate count for declaratory judgment pursuant to the Declaratory Judgment Act. (Rec. Doc. 1, ¶¶ 75-77). The APA provides for a claim

for declaratory judgment. 5 U.S.C.A. § 703. As this Court is recommending that Plaintiff's APA claim challenging the 2013 Rule proceed, it recommends that Count IV be dismissed as duplicative.

### e. Constitutionality of 29 U.S.C. § 207(*l*)

As an alternative prayer for relief, Plaintiff requests the Court to declare that the DOL's "extension of overtime to 'employee[s] in domestic service,' 29 U.S.C. § 207(*l*), exceeds the limited and enumerated powers of the United States Congress under Article I of the U.S. Constitution." (Rec. Doc. 1, ¶ 2). Congress expanded the scope of the FLSA in the 1974 amendments by extending the Act's minimum-wage and overtime protections to employees in domestic service. 29 U.S.C. §§ 206(f), 207(*l*). As authority for the new amendment, Congress cited its Commerce Clause power finding that "the employment of persons in domestic service in households affects commerce." 29 C.F.R. § 552.99. Congress's rationale for including domestic workers was based on their handling of goods (soaps, mops, detergents, and vacuum cleaners) in interstate commerce and freeing household members to engage in activities in interstate commerce. *Id*.

Congress's interstate commerce power allows it to regulate "the channels of interstate commerce," "the instrumentalities of interstate commerce, or persons or things in interstate commerce," and "those activities having a substantial relation to interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995). The

17

*Lopez* Court found that activity must "substantially affect" interstate commerce to trigger Congress's commerce power. *Id.* at 559. Plaintiff argues that "Congress's commerce power does not reach wages for domestic services simply because those workers sometimes happen to use vacuum cleaners or other goods shipped at some point in the past in interstate commerce." (Rec. Doc. 1, ¶ 74).

However, Congress did not just cite the handling of interstate goods. Plaintiff fails to acknowledge how domestic service workers also free household members to engage in activities in interstate commerce, i.e. employment across state lines. The Court finds that domestic service workers substantially affect interstate commerce and thus recommends that Count III be dismissed.

V. **Sovereign Immunity**

The only claim proceeding under this Court's recommendation is Plaintiff's APA claim challenging the 2013 Rule. The APA contains a waiver of sovereign immunity:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States…

5 U.S.C.A. § 702; *see also Bowen v. Massachusetts,* 487 U.S. 879 (1988).

**Conclusion**

For the reasons discussed herein, it is recommended that Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (Rec. Doc. 13) be GRANTED in part and DENIED in part whereby all claims are dismissed with the exception of Plaintiff's APA claim challenging the 2013 Rule[2].

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

---

[2] The Court notes that on July 2, 2025, the DOL issued a proposed rule that would reinstate the minimum wage and overtime exemption for home care workers employed by third-party home care agencies which may render this entire matter moot. ("Because the Department is concerned that the 2013 regulations might not reflect the best interpretation of the FLSA and might discourage essential companionship services by making these services more expensive, the Department is proposing to return to the 1975 regulations."). Application of the Fair Labor Standards Act to Domestic Service, 90 Fed. Reg 28976 (proposed July 2, 2025)(to be codified at 29 C.F.R. pt. 552).

of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 28th day of July, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE